■ In the Matter of the Estate of EVE N. KNEZNEK, Deceased. TRUSTCO BANK, N. A., as Executor of EVE N. KNEZNEK, Deceased, Appellant; SYLVIA HAASE, Respondent. [727 NYS2d 180] —Carpinello, J. Appeal from an order of the Surrogate's Court of Albany County (Marinelli, S.), entered August 8, 2000, which partially denied petitioner's motion for partial summary judgment.

In 1978, Eve N. Kneznek (hereinafter decedent) executed a "Trust Agreement" (hereinafter the 1978 agreement) creating a lifetime trust which provided for, *inter alia*, the payment of income to her for life and the distribution of the trust corpus upon her death, and named herself and her sister as cotrustees

and reserved her right to revoke, alter or amend the trust. The 1978 agreement was amended twice by agreements which, instead of amending only particular terms of the trust, restated all of the trust terms, including those that were revised as well as those that remained the same. Thus, in 1984, decedent executed an "Amended and Restated Trust Agreement" (hereinafter the 1984 agreement) which modified the plan for distribution of the trust corpus in the event of her death and again named herself and her sister as cotrustees and reserved her right to revoke, alter or amend the trust. Next, in November 1990, shortly after her sister's death, decedent executed the third agreement, entitled "Amended and Restated Revocable Lifetime Trust" (hereinafter the 1990 agreement), which expressly referenced the 1978 agreement as "amended and restated" in 1984 and expressed decedent's intent "to further amend and restate the terms of the aforesaid [1978] Trust Agreement, as hereafter set forth." The 1990 agreement again modified the plan for distributing the trust corpus, named Eugene Karp, the attorney who prepared all three agreements, as cotrustee with decedent and again reserved decedent's right to amend, modify or revoke the trust.

By letter dated May 13, 1991, decedent advised Karp that she had revoked the trust that he had prepared "several months ago" because she was "not happy with many of the bequests." Decedent thereafter engaged another attorney and executed a will naming petitioner as executor. After decedent's death in 1997, petitioner commenced this proceeding for a declaration that any trust created by decedent had been revoked, resulting in the inclusion of all trust assets in decedent's estate. After joinder of issue, petitioner moved for partial summary judgment declaring that the terms of the 1978 and 1984 agreements had been supplanted by the 1990 agreement. The motion was opposed by respondent, who was a substantial beneficiary under the terms of the 1984 agreement, but was to receive considerably less under the 1990 agreement and apparently was not a beneficiary at all under the will. Surrogate's Court granted the motion to the extent of dismissing any claims based on the 1978 agreement, but concluded that there were issues of fact as to whether the 1984 agreement had been "revoked." Petitioner appeals.

The overall design of the three agreements clearly was to create a trust in 1978 and to provide for its continuation as

amended and restated in 1984 and 1990.[1] Petitioner contends that by restating the trust in its entirety, the legal effect of both the 1984 and 1990 agreements was to revoke any preexisting trust and to simultaneously create a new one with restated terms. Respondent does not disagree that the effect of the 1984 agreement was to supplant the terms of the 1978 agreement. Thus, the only issue on appeal is whether the record demonstrates as a matter of law that decedent also, in effect, revoked the 1984 agreement by virtue of her execution of the 1990 agreement. Upon our review, whether we speak in terms of "revocation" or "amendment," we find that the clear and unambiguous language of the 1990 agreement demonstrates that it was intended to have exactly the same purpose and effect as the 1984 agreement, i.e., to supplant the terms of the existing trust with amended and restated terms. Accordingly, we reject respondent's argument that decedent's conduct after executing the 1990 agreement raised a question of fact regarding the legal effect of that agreement.[2]

In support of her position, respondent relies on the fact that the trust corpus was never delivered to Karp as cotrustee under the 1990 agreement. This argument ignores the fact that formal reconveyance of the trust corpus is unnecessary where, as here, the settlor reserved the power to revoke the trust without specifying a particular mode of revocation and the new trust agreement clearly reflects the settlor's intent to supplant the earlier one (see, Restatement [Second] of Trusts § 330, comment i). Respondent also points to the fact that after the execution of the 1990 agreement, the brokerage account containing the trust assets continued to bear the names of decedent and her sister as cotrustees under the 1984 agreement. We are unpersuaded. Under both the 1984 and 1990 agreements, decedent reserved to herself the right as cotrustee to make all investment decisions regarding the trust, and her signature alone was sufficient to bind the trust. As a practical matter then, there was no need for decedent to take any formal steps to change the title on the brokerage account in order for her to continue to exercise her exclusive control over the account after executing the 1990 agreement. Nor do we view decedent's conduct in keeping her sister's name on the brokerage account as necessarily consistent with an intent to continue the 1984

**1.** The ultimate legal effect of decedent's May 13, 1991 letter advising Karp that the trust had been revoked is not at issue on this appeal.

**2.** Recognizing the increasing use of lifetime trusts, the Legislature amended the EPTL in 1997 by, *inter alia*, adding EPTL 7-1.17 which governs the execution, amendment and revocation of lifetime trusts (L 1997, ch 139). The amendments are not applicable to this case (*see*, L 1997, ch 139, § 7).

trust. That agreement obligated decedent to appoint a successor cotrustee upon the death of her sister, which she did by virtue of executing the unambiguous 1990 agreement. Lastly, decedent's 1991 letter expressly revoking the 1990 trust is inconsistent with any claim that decedent intended the 1984 trust to continue especially in light of her decision to "start fresh" and "engage[ ] a new lawyer."

In short, the 1990 agreement clearly and unambiguously provided that the 1978 agreement as amended and restated by the 1984 agreement was to be amended and restated in its entirety, thereby completely supplanting the terms of the 1984 agreement. In the absence of any evidence in the record sufficient to raise a question of fact as to the intent and legal effect of the 1990 agreement, petitioner was entitled to partial summary judgment dismissing any claims predicated on the terms of the 1984 agreement.

Mercure, J. P., Peters, Spain and Mugglin, JJ., concur. Ordered that the order is modified, on the law, with costs to petitioner, by reversing so much thereof as partially denied petitioner's motion for partial summary judgment on the issue of the revocation of the "Amended and Restated Trust Agreement" executed by decedent on June 21, 1984; motion granted and all claims based upon the terms of said agreement dismissed; and, as so modified, affirmed.